<div style="margin-right:auto;margin-left:auto;width:30%;border-top:1px solid #000;"></div>

MAYDWELL *et al.* Lessee vs. CARROLL.

APPEAL from *Baltimore* County Court. Ejectment brought by the appellant to recover a tract of land called *Merryman's Lot,* on separate demises of one fifth part by each of the lessors The defendant, (now appellee,) took defence on warrant, and plots were returned.

1. At the trial, the plaintiff read in evidence a patent granted to *Charles Merryman* and *Nicholas Haile,* on the 6th of May 1689, for *Merryman's Lot,* containing 210 acres, more or less. It was admitted that *Merryman* and *Haile* divided the said tract of land between them, and that *Merryman* received all that part which lies to the N

*Margin notes:*
1813.
Maydwell
vs
Carroll.

December.
An exchange of lands cannot be proved by parol evidence.

E of a line drawn on the plots, and *Haile* received all that part which lies to the S W of the same line, (this latter part being the land in controvery,) and that they took possession of their said respective parts. The plaintiff also gave in evidence, that *Nicholas Haile* died in 1730, having made his last will and testament, devising his said part of *Merryman's Lot*. [See the devises set out in the case of *Carroll's Lessee vs. Maydwell et al. ante* 292.] The plaintiff further gave in evidence, that *Frances Haile*, the devisee for life, and *Neale Haile*, the devisee in remainder, of said part of *Merryman's Lot*, lived together thereon until about the year 1740. That a certain *Benjamin Long* purchased of a certain *William Worthington* a tract of land called *The Forrest*, in fee simple, and that *Long* agreed to let *William Carter* have one half of the said land, upon his paying the sum of ten pounds sterling, which said sum of money he accordingly paid, and himself and *Long* entered upon and were possessed of said tract of land, before and in the year 1740, but obtained no deed or conveyance for it at that time. That *Neale Haile* and *William Carter*, being so possessed and entitled to the said parts of the tracts of land called *Merryman's Lot* and *The Forrest*, did, by parol agreement, mutually exchange said parts of said tracts of land. and in pursuance of said exchange, in the year 1740, *Neale Haile* removed to and took possession of *Carter's* part of *The Forrest*, and continued in the undisturbed and peaceable possession of it until his death in the year 1796, and also devised the same, by his last will and testament, and that his devisee continues to this day in the undisturbed and peaceable enjoyment and possession thereof; and that *Carter* removed to and took possession of *Neale Haile's* part of *Merryman's Lot*, in conjunction with *Frances Haile*, by her permission and consent, to whose daughter he had been and then was married, and lived in the same house with *Frances Haile*, the devisee for life of *Nicholas Haile*, during the winter of the year 1740, and in the spring he built himself a house on it, and began to clear and cultivate the same, and continued in the undisturbed possession of it from that time until the year 1778, with the approbation and consent of *Frances Haile*, the tenant for life, when he removed away, and *Joseph Ensor*, under a contract of purchase from *Carter*, entered in possession of the place. That *Ensor*, if he ever

1813.

Maydwell
vs
Carroll

paid any part of the consideration which was to have been paid to *Carter* for the said land, altogether failed to pay a considerable part thereof; and that about the time of the death of *Ensor*, which happened about the year 1779 or 1780, *Carter* returned and took possession of said land again; and that *Carter* never gave any deed or conveyance for the said land to *Ensor;* and that *Carter*, and those claiming under him, were from thenceforth in the peaceable possession of the said lands, until they were ejected therefrom by *David M'Mechen* and *Elijah Merryman*, acting as trustees of *Joseph Ensor*, a lunatic, and son of the said *Joseph Ensor*, deceased. That *Carter* died in 1782, having by his will, dated the 21st of December 1781, devised the said part of *Merryman's Lot* to *James Maydwell*, who married his daughter *Temperance*. This devise was as follows: "*Item.* Now whereas I was possessed of a tract of land, being part of *Merryman's Lot* and part of *Haile's Addition*, as expressed by *Nicholas Haile's* will, which land was willed by the said *Nicholas Haile* to his son *Neale*, for which I changed another tract in the Forest, and made the said *Neale* a lawful right, and he now refuses to make me a right. Now I do hereby give unto my son-in-law, *James Maydwell*, full and ample authority to sue for the same, to all intents and purposes, as I could do myself if I was in being and there present; and if he recovers the same, it is my will and desire, that my dear and well beloved wife *Anne*, shall have her living, in or on it during her life, provided she dies a widow, but in case she marries again, then she shall quit all claim or privilege thereto, and the right to descend to, and become the right of my said son-in-law, the husband of my daughter *Temperance*, and their heirs, for ever; and in like manner after her decease if she dies a widow." That *Temperance* and *James* died before the institution of this suit, intestate, leaving the lessors of the plaintiff their only children and heirs. That at the time of the exchange between *Neale Haile* and *William Carter*, the said *Neale Haile* gave his bond of conveyance to *Carter*, for the conveyance of said part of *Merryman's Lot*, in pursuance of said exchange, which bond was not now in possession of the plaintiff, and was proved to have been lost. That *William Worthington*, in pursuance of said exchange, by deed of bargain and sale regularly executed on the 10th of September 1741, conveyed all the said land called *The Forrest*

to *Neale Haile* and *Benjamin. Long*, containing 200 acres, for the consideration of £18 sterling money. That the share or interest of *Benjamin Long* in *The Forrest*, came by regular and legal conveyance from said *Long* to *Joseph Taylor*; and that *Carter* and *Long* held each one half of that tract, as in severalty, before the exchange between *Haile* and *Carter*; and that after *Haile* made said exchange, and took possession of his part of *The Forrest* in pursuance of the exchange, he and *Long* held each one half said tract in severalty, until *Long* sold and conveyed his part thereof, and the same came as aforesaid to *Joseph Taylor*; and that *Taylor* and *Haile* thereupon did, by deed regularly executed, acknowledged and recorded, confirm said division, and holding in severalty, and divided thereby the said land between themselves, in pursuance of and according to said holding. That although *Joseph Ensor*, the father, died possessed of considerable property real and personal, yet the same was greatly insufficient to pay his debts, and that *Carter*, nor his representatives, have ever been paid the balance remaining due as aforesaid for the purchase of said land, from *Joseph Ensor*, or any other person; and that *Frances Haile*, the tenant for life, died some time in the year 1774. The defendant then read in evidence, by consent, the depositions of *Benjamin Long* and *George Chiles*. [See them set forth in the before mentioned case of *Carroll's Lessee* [*vs. Maydwell et al. ante* 292.] He also gave in evidence an indenture, executed on the 11th of April 1771, by *Neale Haile*, with a certain *William Cooke*, to the said *Joseph Ensor*, of and concerning the said land called *Merryman's Lot*; and also a common recovery, suffered by said *Neale Haile*, to said *Joseph Ensor*, of and concerning the said land, with a writ of seizin thereon, and the return of the said writ; and that the said indenture was made, and common recovery suffered, with the knowledge and consent of the said *William Carter*, and in pursuance of the permission given by him for that purpose, as stated in the said deposition of said *Chiles*. [See the deed and common recovery in *Carroll's Lessee vs. Maydwell, et al. ante* 292.] That in or about the year 1779, *Joseph Ensor* died, leaving a very considerable real estate, and also leaving an infant son, *Joseph Ensor*, his heir at law, who was an ideot, and a daughter, *Mary Ensor*; and that after the death of *Joseph Ensor*, the father, and dur-

ing the infancy of *Joseph Ensor*, the son, *William Carter*, alleging that seventy pounds, part of the sum agreed to be paid to him by *Joseph Ensor*, the father, for his right to part of *Merryman's Lot*, still remained due and unpaid, re-entered into the said land, and possessed himself thereof, and died so possessed, having first made his will, as stated and proved by the plaintiff. He also gave in evidence an act of assembly appointing *Elijah Merryman* and *David M·Mechen* trustees of the person and estate of the said *Joseph Ensor*, the infant, passed at May session 1783. And that after the passing of the said act, and the death of *William Carter*, and during the life of *Joseph Ensor*, the infant, *Merryman* and *M·Mechen*, under the authority in the said act contained, brought an action of ejectment in the general court against *James Maydwell*, then in possession of the said part of *Merryman's Lot*, under the will of *William Carter*, to recover from him the said land, in which action the aforesaid deposition of *Benjamin Long* was taken on the part of the defendant, and filed in the cause; and there was a verdict for the plaintiff in May term 1789, a writ of possession issued to October term 1790, and possession thereof duly delivered to *Merryman* and *M·Mechen*, on the 18th of September 1790. He also gave in evidence a deed of mortgage from the said *Ensor*, the father, to *Charles Carroll*, of *Carrollton*, duly executed, acknowledged and recorded, dated 27th of June 1771, for, amongst other land, 105 acres of land, lately the dwelling plantation of *Nicholas Haile*, deceased, being part of a tract or parcel of land called *Merryman's Lot*; also 30 acres, being part of *Haile's Addition*, &c. redeemable on payment of £676 19 9 sterling money, on the 30th of June 1777. Also a deed from *Neale Haile* to *Merryman* and *M·Mechen*, dated the 5th of September 1789, for *Merryman's Lot*, and *Addition*, commonly called *Haile's Addition*, stating the conveyance from *Haile* to *Joseph Ensor* in the year 1771, in which conveyance it is stated there were defects, &c. He also gave in evidence, that after the said possession, *Merryman* and *M·Mechen* conveyed the said land to *Charles Carroll*, of *Carrollton*, by deed duly executed, acknowledged and recorded, dated the 1st of May 1794—consideration, in part payment of his mortgage, and of 5 shillings, &c. And that the said land, through various conveyances, passed from the said *C. Carroll*, of *Car-*

1813.
Maydwell
vs
Carroll

rollton, to the defendant, in or about the year 1801, who, since that time, and before the institution of this suit, made improvements thereon to the value of $40,000, and upwards; and that James Maydwell, in his life-time, and the lessors of the plaintiff before and since his death, resided in the neighbourhood of the said land, and were fully apprised of the said improvements. The plaintiff then prayed the opinion of the court, and their direction to the jury, that if they believed the matters so offered in evidence by the plaintiff, that then he had made title to the land mentioned in the declaration, and was entitled to recover, although they may also believe the evidence of the defendant; and that if a deed was necessary from *Neale Haile* to *William Carter*, to perfect *Carter's* title to the said part of *Merryman's Lot*, that the jury might and ought to presume that such deed was regularly and duly made. This direction the Court, [*Nicholson,* Ch. J.] refused to give. The plaintiff excepted.

2. The plaintiff then gave in evidence, that after *En-sor's* death, *Carter,* and those who claim under him, were in the peaceable and quiet possession for ten years, of the land for which this suit was brought. The defendant then gave in evidence, that the possession of *Carter,* and those claiming under him, was during the infancy of *Joseph Ensor,* the son, and was terminated by the recovery in ejectment by *Merryman* and *M'Mechen,* and the obtaining of possession under the same. The plaintiff then prayed the court to direct the jury, that he was entitled to recover the said land against the defendant, unless he the defendant can show a good title to the same. But the court refused to give the direction. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, and JOHNSON, J. by

*Martin,* for the Appellant; and by
*Harper,* for the Appellee.

CHASE, Ch. J. delivered the opinion of the court, stating, that in the case of *Carroll's Lessee vs. Maydwell, et al.* (*ante* 292,) which was very fully argued by the counsel concerned, the court had formed an opinion on the question as

to the exchange of the lands, and which was, that such an exchange cannot be proved by parol evidence, and they were therefore of opinion, in this case, that the appellant had not made title to the land in dispute. The court consequently concurred in the opinions declared by the court below in each of the bills of exceptions.